JACOB JOHNSON FISH COMPANY, Respondent, vs. HAWLEY, Administrator, Appellant.

*September 20—October 8, 1912.*

*Contracts: Conditional acceptance of offer.*

Plaintiff, a company engaged in the fishing business, offered to pay H. $300 for the use of his tugboat for the season. H. replied, by way of a counter offer, "Go for three hundred for thirty days, you pay expenses one way." Plaintiff then wired: "Terms accepted, engage Capt. Garland, writing;" and also wrote to H., inclosing two copies of a lease and saying: "Please sign one copy and return it to us at once so that we may know the matter is settled. . . . We wired you this morning that your terms were accepted and to engage Capt. Garland. And we will write him also and engage his services. We want no other man if we can get him. . . ." H. promptly informed plaintiff that he would not consent to the engagement of Capt. Garland, but plaintiff did not recede in the matter of such engagement until about a week later, at which time H. had leased his boat to another person. *Held*, that plaintiff's acceptance of the counter offer was conditional upon the engagement of the captain named, and that as there had been no assent to such condition no contract was closed.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action for damages on contract.

Plaintiff applied to defendant's intestate, Batt Hawley, to engage the tug "Tramp" in the fishing industry on Lake Superior for the season, using these words: "If tug 'Tramp' is not engaged will pay $300 for season. Wire me answer please." Mr. Hawley promptly replied: "Tug not engaged. Go for three hundred for thirty days, you pay expenses one way. Wire answer." Plaintiff answered: "Terms accepted, engage Capt. Garland, writing." Also wrote inclosing duplicate forms for leases, and requesting execution thereof and return of one duplicate so that the matters might be regarded as settled, assuring Mr. Hawley that the lessee would pay ex-

penses one way and saying, "We wired you this morning that your terms were accepted and to engage Capt. Garland. And we will write him also and engage his services. We want no other man if we can get him. We expect to want the boat Nov. 15th, and unless we wire you otherwise, you may be here on that date. Please have lease signed before notary public."

Upon Mr. Hawley receiving the papers, he promptly complained by telephone that the terms specified therein were not according to the offer, and the condition, as to hiring Capt. Garland, was objectionable. Plaintiff acknowledged the error as to terms; but, does not appear to have withdrawn the condition, mentioned in the letter, as to hiring Capt. Garland. However, plaintiff followed the telephone communication by a letter, using these words:

"If there is anything about the contract we sent you for your signature that you do not like, draw up one and send it to us at once. A contract is, really, not necessary, as we have your acceptance; but, it is best, in cases of this kind, to have a thorough understanding so there will be no friction later. . . . We are sorry to hear that you do not approve of Capt. Garland as we consider him a good man for the business and we hope that you will decide to forget the past and let him come up with her."

To that reply was promptly made that the tug had been leased to other parties. Plaintiff thereupon hired the tug "Brower" which went out of commission in a few days and then secured the tug "Arthur" for remainder of the season. Because of inferiority of the "Arthur" plaintiff was compelled to confine the fishing operations to a different district than could have been reached by the tug "Tramp." Only fifty tons of fish were secured during the season. The party who used the "Tramp" secured 122½ tons. The net profit on a ton of fish was $8.

At the close of the evidence, a motion in defendant's behalf for a directed verdict was denied, upon the ground that the response by Mr. Hawley to plaintiff's telegram, contained the

words, "Close contract," "Terms accepted;" that the refer-ence to Capt. Garland was merely advisory, and that the letter which followed did not change the matter. The cause was submitted to the jury with directions to find for the plaintiff. The jury were informed that they only had to deal with the subject of damages; but, that was followed by instructions, practically taking such subject from them. They were told that there was a contract, a breach of it by Mr. Hawley, and that plaintiff was entitled to such damages as it suffered "that were the immediate and direct result of the breach," and that the exact amount was rendered certain by the undisputed proof of the difference between the amount of fish obtained by use of the "Tramp" and the amount plaintiff obtained by use of the "Brower" and "Arthur" and the net profit per ton of fish. This language was used: "The evidence as to plaintiff's damages is proven and not disputed by any evidence. It rests upon proven facts. . . . There is no element of uncer-tainty left."

The jury returned a verdict for $250, and judgment was rendered thereon.

For the appellant there was a brief by *E. C. Alvord* and *John Walsh,* and oral argument by *Mr. Walsh.*

*John J. Fisher,* for the respondent, contended, *inter alia,* that the instruction to engage Capt. Garland and the request for a more detailed agreement were nothing more than an ef-fort to explain or modify a contract already made. They did not affect the acceptance nor constitute a condition attached thereto. 9 Cyc. 283, 284; *Turner v. McCormick,* 56 W. Va. 161, 49 S. E. 28, 67 L. R. A. 853; *Purrington v. Grimm,* 83 Vt. 466, 76 Atl. 158, 159; *Matteson v. Scofield,* 27 Wis. 671; *Kreutzer v. Lynch,* 122 Wis. 474, 100 N. W. 887.

MARSHALL, J.    A question is presented respecting whether the court gave the jury the proper rule of damages, and whether there was any evidence to properly establish dam-

ages; but the view we take of the case renders such questions immaterial.

The trial court construed the occurrences between Mr. Hawley and respondent as having operated to close a contract for the use of the former's tugboat, irrespective of whether Capt. Garland was secured to command it, prior to receipt by Mr. Hawley of the letter of November 3, 1907. The reasoning by which such conclusion was reached appears in the record, is sufficiently mentioned in the statement, and seems infirm in several particulars.

Much stress was placed upon the word sent by Mr. Hawley to respondent in reply to the latter's offer to pay $300 for the season's use of the tug. It is said in the judge's opinion, that these words were used: "Close contract," "Terms accepted." We do not find the words "Close contract" were used,—only the words "Terms accepted. Engage Capt. Garland, writing." The only terms mentioned in the offer were in these words: "Go for three hundred for thirty days, you pay expenses one way." That was referred to in plaintiff's letter of November 3d as an acceptance which closed a contract; but it is plainly not that. It was only a counter offer to the one mentioned in the communication to Mr. Hawley, offering $300 for use of the tug for the season to depend on conditions. The counter offer covered both subjects. So up to this point there, certainly, had not been any meeting of minds. The reply to the counter offer accepted the terms as to price and expense; but, added the words "Engage Capt. Garland, writing." Such reply was quite ambiguous. The natural inference therefrom was that the terms mentioned by Mr. Hawley, as to compensation and length of the season, were accepted; but Capt. Garland should be engaged to command the boat and an explanation would be made by letter. The words "Engage Capt. Garland" and the word "writing" were tied together and pretty plainly suggested that the contractual details were still to be settled and the signification of the words

"Engage Capt. Garland, writing," would be made known in due course.    Now what followed by letter does not appear to have been given due weight by the trial judge in coming to a conclusion, as to whether the reference to Capt. Garland was merely suggestive or matter of condition.    Standing alone, it might fairly be construed to be the former.    Mr. Hawley seems to have been somewhat uncertain and so made no immediate reply; but, waited for the letter.    When that came it, doubtless, seemed quite plain to him that the actual closing of the contract was, in the judgment of respondent, to wait upon acceptance of its choice of a person to command the boat and execution of a written lease as to terms.

The letter stated with reference to the proposed lease, "Please sign one copy and return it to us at once so that we will know the matter is settled."    That plainly indicated it was not to be understood a contract had been closed in advance of the writing being signed.    The letter further, unmistakably, indicates that the lease, as written, was not intended to cover the entire matter.    It made no reference to the condition contained in Mr. Hawley's letter as to respondent paying expenses one way, nor to the ambiguous language in the telegram: "Engage Capt. Garland."    The former was covered in the letter thus: "We have not mentioned this matter in the lease; but we agree to pay expenses one way *en route.*"    The latter was covered thus: "We wired you this morning that your terms were accepted and to engage Capt. Garland, and we will write him also and engage his services.    We want no other man if we can get him."    Thus emphasizing the words of acceptance as referring only to the price for use of the boat and the term of service, and giving the reference to Capt. Garland the cast of a condition.

How could Mr. Hawley otherwise have understood the telegram than as suggested in connection with the matter?    If it be true that respondent did not mean to convey such an idea; but used language leading Mr. Hawley, in the exercise of or-

dinary care, to suppose it did, it must bear the burden of its fault. He had a right to act upon the meaning which respondent's words conveyed to him, if such, reasonably, might be the meaning an ordinarily careful person would read out of such language under the same or similar circumstances. The letter not only declared that respondent wanted no other person to command the boat if he could be secured; but, took the matter of settling the question out of Mr. Hawley's hands, saying it would write Capt. Garland and engage him. Nothing occurred thereafter indicating that Mr. Hawley was agreeable to placing his boat in charge of Garland. On the contrary he made known, promptly, by telephone, that he would not accede to that, but stand by his choice which was Capt. McClain. It does not appear that respondent receded till the letter of November 3, 1909, was written. There the counter offer made by Mr. Hawley, October 27th before, was referred to as an acceptance,—a very singular circumstance,—showing a purpose to claim the existence of a contract by a misconstruction of Mr. Hawley's telegram. There was nothing in the nature of an acceptance until the telegram was sent by respondent in response to Mr. Hawley's counter offer. Note the peculiar language of respondent's letter: "On the day we received *your wired acceptance* of our offer we had almost concluded a deal for the 'Curry;' but were very glad that we did not have to engage her as she is altogether too slow. Now, however, we cannot, possibly, get along without your boat as all other boats suitable for herring fishing have been engaged." That was followed by language suggesting consent to Capt. McClain as commander of the boat; but still showing preference for Capt. Garland.

It seems clear that respondent did not recede from its demand until it found it could not obtain the use of the boat on the condition it had imposed and that there was no other boat obtainable. Before the November 3d letter was received Mr. Hawley had leased his boat to another party. Had the

trial court given proper significance to the letter explaining the first reference to Garland, instead of leaving it entirely out of view, as is clearly indicated in the opinion was done on the motion to direct a verdict, and in some way viewed the case as if respondent's reply to Mr. Hawley's counter offer contained the words "close contract" when no such words were therein, it seems clear that the conclusion would not have been reached that, by such telegram, the minds of the parties met and a contract was closed, irrespective of whether Capt. Garland was engaged to command the boat or not.

In view of the foregoing, it is considered that the motion to direct a verdict should have been granted.

*By the Court.*—The judgment is reversed, and cause remanded with directions to render judgment in favor of the defendant dismissing the cause with costs.

